UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00028-FDW-SCR

| | |
|---|---|
| FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C., | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) |
| RUSSELL ANRAY HARRINGTON, | ) ) |
| **Defendant.** | ) ) ) |

**ORDER**

**THIS MATTER** is before the Court sua sponte as to whether this Court has jurisdiction over this matter, which the Court concludes must be determined prior to ruling on the pending Motion for Summary Judgment.

### I.   Background[1]

Plaintiff Firemen's Insurance Company of Washington, D.C., ("Fireman's") filed this suit against Russell Anray Harrington ("Harrington") seeking a declaratory judgment "pursuant to N.C. Gen. Stat. § 1-253, *et seq*., and/or 28 U.S.C. § 2201, *et seq*.," to determine Fireman's coverage obligations in a lawsuit and claims arising out of a motor vehicle accident. (Doc. No. 1, p. 1.) On September 11, 2018, Madison Hargett, while driving in York County, South Carolina, caused the motor vehicle accident when she failed to yield to ongoing traffic while making a left turn. Hargett's vehicle struck a truck operated by Harrington, who was driving the truck for his

---

[1] Because this matter is currently pending resolution of a motion for summary judgment, the background provided herein views all facts, and reasonable inferences taken therefrom, in the light most favorable to Defendant as the nonmoving party. Bhattacharya v. Murray, 93 F.4th 675, 686 (4th Cir. 2024) (citing Davison v. Rose, 19 F.4th 626, 633 (4th Cir. 2021), cert. denied, __ U.S.__, 143 S. Ct. 106, 214 L.Ed.2d 25 (2022)).

1

employer, Portable Storage Systems, Inc., ("PODS"). Harrington contends he sustained serious and significant injuries because of the accident and could no longer work for PODS.

When the accident occurred, Hargett—the driver of the car—and her father held an insurance policy issued by Progressive Direct, which provided bodily injury liability coverage with policy limits of $100,000. At the same time, PODS held a commercial auto insurance policy issued by Fireman's, which covered the PODS truck driven by Harrington and provided, among other things, certain underinsured motorist ("UIM") coverage ("the UIM Policy"), with Policy limits of $1,000,000 per accident. The UIM Policy explains that under North Carolina law, "Underinsured Motorist Bodily Injury Coverage . . . protects you and your family against injuries and property damages caused by the negligence of other drivers who may have limited or only minimum coverage or even no liability insurance." (Doc. No. 12-1, p. 49.)

In July 2021, Harrington sent a demand package to Fireman's via Berkley Southeast Insurance Company ("Berkley Insurance"), which Harrington contends Fireman's hires to serve as adjusters and handle claims under Fireman's policies, including the UIM Policy at issue here. The demand package set forth Harrington's injuries, medical expenses, and other damages, which exceeded $100,000. On August 2, 2021, Progressive—Hargett's insurance provider—informed Harrington that it would tender its $100,000 bodily injury policy limits in exchange for Harrington's execution of a "settlement," (Doc. No. 12-2), entitled a "Covenant Not to Execute." (Doc. No. 12-3.) The next day, a Progressive agent and Joel Coe, who is an agent with Berkley Insurance, had a telephone conversation, and the Progressive agent informed Coe that Progressive had tendered its policy limits to Harrington. On that same day—August 3, 2021—Mr. Coe made a written status update in the claim messaging portal indicating the "I contacted the Tort Feasor's carrier regarding this loss . . . [and] they received a time limit demand and ultimately tendered their

2

$100K limits, yesterday." (Doc. No. 24-1, p. 3.) Over the next several weeks, Berkley Insurance subsequently requested additional materials from Harrington to investigate and evaluate his claim on the UIM Policy.

On September 7, 2021, Harrington filed suit against Hargett and her father in the Court of Common Pleas in York County, South Carolina, for his injuries caused by the accident (hereinafter, "South Carolina Case"). On September 27, 2021, Harrington executed the Covenant Not to Execute with Progressive in exchange for Progressive's payment of $100,000. (Doc. No. 12-3.) In the Covenant, the parties acknowledged the Covenant was executed "in the State of South Carolina and the parties agree that it shall be construed and enforced pursuant to South Carolina law." (Id., p. 2.) On February 10, 2022, Fireman's appeared in the South Carolina Case and filed its "Answer of Unnamed Defendant." (Doc. No. 18-10.) The parties engaged in some litigation in the South Carolina Case. (See, e.g., Doc. No. 18-14.)

On January 16, 2023, nearly a year after filing its Answer in the South Carolina case, Fireman's filed this declaratory judgment action, seeking a declaration by this Court concerning its rights and obligations under the UIM Policy. On February 21, 2023, the judge in the South Carolina Case granted Fireman's Motion to Stay Proceedings and ordered the South Carolina Case be stayed pending a determination in this case. (Doc. No. 18-15.)

Fireman's now moves for summary judgment and asks this Court to rule, as a matter of law, that Harrington is not entitled to and is barred from recovering benefits under the UIM Policy because he failed to comply with certain notice provisions under North Carolina law and the UIM Policy. Harrington responds in opposition and argues that genuine issues of material fact bar entry of judgment at this stage in the proceedings.

## II. Standard of Review

Fireman's seeks summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties' pleadings and evidence in support of their respective positions on the motion at bar, however, present a significant jurisdictional question that this Court must first decide prior to resolving any issue on the merits. Specifically, the parties indicate the South Carolina Case is stayed pending resolution of this case. (Doc. No. 18-15.) Neither a judge nor a jury has determined liability or—more importantly—awarded damages in excess of the $100,000 Progressive policy limits. Thus, the issue of whether Hargett is an underinsured motorist remains undetermined.

It is axiomatic that federal courts are "courts of limited jurisdiction," and courts "possess only that power authorized by Constitution and statute." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (quotation and citation omitted). Article III of the United States Constitution limits federal courts to adjudication of "Cases" and "Controversies." U.S. CONST. art. III., § 2. The constitutional doctrines of standing and ripeness ensure that courts "do not exceed the limits of Article III judicial power." Trustgard Ins. Co. v. Collins, 942 F.3d 195, 200 (4th Cir. 2019) (citations and quotations omitted). "The 'irreducible constitutional minimum of standing' requires the petitioner to allege a concrete injury that is 'actual or imminent, not conjectural or hypothetical.'" Id. at 199 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, (1992). Ripeness "determines when a case or controversy is fit for federal judicial review" and prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Trustgard, 942 F.3d at 199 (cleaned up).

Article III ripeness can be missing for cases seeking resolution of a dispute over a party's obligation to pay a judgment in a separate action where neither judgment nor settlement has

4

occurred. Courts cannot resolve cases and controversies that are "of a hypothetical and contingent nature" based on a speculative injury that "may or may not occur" depending on the outcome of that separate lawsuit. Id. at 200. "Although we recognize how valuable it might be for the parties to know an insurer's obligations before liability is resolved, practical value cannot overcome this fundamental limitation on our jurisdiction." Id. at 201. In other words, courts cannot prematurely adjudicate responsibility for "possible liability" that "might arise from pending lawsuits" because those cases are not ripe until liability is determined. Id. (citing A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 931 (4th Cir. 1977) (concluding claims for indemnification for expenses and liability in a separate pending—but not yet decided—personal injury or wrongful death action were not ripe for adjudication; noting "there has been neither a determination of liability nor a settlement in any of the personal injury or wrongful death actions pending against [the defendants]")); see also Michael Pellis Architecture PLC v. M.L. Bell Constr. LLC, No. 3:22CV470 (DJN), 2023 WL 6222623, at *11 (E.D. Va. Sept. 22, 2023) (concluding the court lacked subject matter jurisdiction over the indemnification claim; "Since any future uninsured liability claims are wholly speculative at this point, Plaintiffs' claim for indemnification is not ripe for adjudication."). Otherwise, a court risks issuing an advisory opinion.

Article III justiciability, including ripeness, is required for courts to resolve a declaratory judgment action. The statutes comprising the Declaratory Judgment Act authorize a federal court to "declare the rights and other legal relations of" interested parties "in a case of *actual controversy* within its jurisdiction . . . ." 28 U.S.C. § 2201 (emphasis added); see also Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–40 (1937) ("The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy'. . . is operative only in respect to controversies which are such in the constitutional sense."); Zurich Am. Ins. Co. v. Covil Corp., No. 1:18-CV-932, 2020 WL

5

4483236, at *3 (M.D.N.C. Aug. 4, 2020) ("the Declaratory Judgment Act does not expand the jurisdiction of federal courts beyond that authorized by Article III; it provides federal courts with subject matter jurisdiction only to the extent 'it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends.'" (quoting Haworth, 300 U.S. at 240)). A declaratory judgment action satisfies the constitutional case-or-controversy requirement if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests;" and is "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (cleaned up).

Ultimately, however, federal courts are empowered to abstain from resolving a declaratory judgment case on the merits notwithstanding the existence of a case or controversy under Article III. The Declaratory Judgment Act "gives federal courts *discretion* to decide whether to declare the rights of litigants. . . . Rather than grant litigants a right to judgment in their case, it merely permits the courts to hear those cases." Trustgard, 942 F.3d at 201 (emphasis added). Indeed, the Fourth Circuit has long recognized that "a district court's jurisdiction under the Declaratory Judgment Act is *unquestionably discretionary*," and the Declaratory Judgment Act "'confer[s] on federal courts *unique and substantial discretion* in deciding whether to declare the rights of litigants.'" Riley v. Dozier Internet L., PC, 371 F. App'x 399, 404 (4th Cir. 2010) (emphasis added; quoting MedImmune, 549 U.S. 118, 136).

Finally, courts cannot simply presume to have jurisdiction just because a case is filed under the Declaratory Judgment Act. "[J]ust because a federal court *could* exercise jurisdiction under the Declaratory Judgment Act does not mean that it *should*." Trustgard, 942 F.3d at 204 (emphasis

in original). The Fourth Circuit has explained the applicable standard to determine whether to exercise jurisdiction over a declaratory judgment action:

> A declaratory judgment is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. At the same time, whenever a parallel proceeding is pending in state court, district courts must also take into account considerations of federalism, efficiency, and comity. To aid district courts in balancing the state and federal interests when a parallel state action is pending, we have articulated four factors for consideration: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere procedural fencing, in the sense that the action is merely the product of forum-shopping.

United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493–94 (4th Cir. 1998) (cleaned up); accord Trustgard, 942 F.3d at 202; Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994).

Bearing these principles in mind, this Court considers whether Article III jurisdiction exists, and if so, whether to exercise jurisdiction under the Declaratory Judgment Act.

### III. Analysis

Here, Fireman's asks this Court to declare as a matter of law that there is no coverage under the UIM Policy for Harrington's claim for underinsured motorist benefits as it relates to the South Carolina Case. In other words, Fireman's asks this Court for a judgment determining that Fireman's does not have any obligation under the UIM Policy *if* the Hargetts are found liable to Harrington and *if* any damages are awarded to Harrington beyond the $100,000 coverage provided by the Hargetts' policy with Progressive. Because the parties have now informed the Court the South Carolina Case is stayed, the Court considers whether Article III is satisfied and whether declaratory judgment jurisdiction is appropriate in this case.

7

Ripeness is a "justiciability doctrine [that] determines when a case or controversy is fit for federal judicial review." Trustgard, 942 F.3d at 199. A claim stands ripe for adjudication "when the action in controversy is final and not dependent on future uncertainties." In re Naranjo, 768 F.3d 332, 347 (4th Cir. 2014). Furthermore, an issue is not ripe for decision "[w]here an injury is contingent upon a decision to be made by a third party that has not yet acted." Doe v. Va. Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013). In determining whether issues are ripe, courts consider "'(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" Cooksey v. Futrell, 721 F.3d 226, 240 (4th Cir. 2013) (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003)). A case is "fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (citation omitted). The "hardship to the parties" may be "measured by the immediacy of the threat and the burden imposed" on a plaintiff. Charter Fed. Sav. Bank v. Off. of Thrift Supervision, 976 F.2d 203, 208–09 (4th Cir. 1992).

Throughout Fireman's Memorandum in Support of its Motion for Summary Judgment, Fireman's repeatedly references Harrington's "*allegedly* sustained" injuries and damages resulting from the Accident. (See, e.g., Doc. No. 10, pp. 1-2 (emphasis added).) And while the record before this Court indicates Fireman's and Harrington have exchanged documents concerning potential injuries and damages arising out of the accident, Fireman's does not concede Harrington's injuries and damages exceed the $100,000 threshold from the Hargetts' policy to make an *underinsured* motorist policy applicable. It is possible—based on speculation and uncertainties, of course—that the South Carolina Case may resolve these issues in a way that makes the UIM Policy inapplicable. Accordingly, Fireman's appears to seek an advisory opinion

from this Court in order to know it's obligations before liability is resolved, and—as the Fourth Circuit has recognized—"[Fireman's alleged injury—that it might have to guarantee a future judgment against [Hargett]—is of a hypothetical and contingent nature: the injury may or may not occur depending on the outcome of the state lawsuit." Trustgard, 942 F.3d. at 200.

Even presuming Fireman's claim is ripe for judicial determination, the Court must consider whether applicable factors counsel in favor of or against exercising discretionary jurisdiction under the Declaratory Judgment Act. See United Capitol Ins. Co, 155 F.3d at 493–94; Trustgard, 942 F.3d at 202; Nautilus, 15 F.3d at 377. Consideration of discretionary jurisdiction—notwithstanding the ripeness issue—is appropriate because "the exact parameters of subject matter jurisdiction in this context remain unsettled," and "courts have exercised jurisdiction without a finding of liability in many cases over the years." Zurich, No. 1:18-CV-932, 2020 WL 4483236, at *3 (M.D.N.C. Aug. 4, 2020) (collecting cases). Moreover, the Fourth Circuit decision in Trustgard questioned—but did not resolve—the ripeness issue in that case, instead opting to render its decision based on the appropriateness of exercising jurisdiction under the Declaratory Judgment Act. 942 F.3d at 201 ("Though we must generally decide jurisdictional questions first, we may address a discretionary jurisdictional question before a nondiscretionary jurisdictional question.").

The Court ORDERS the parties to submit supplemental briefing on their respective positions as to whether this Court should exercise its jurisdiction to resolve the policy coverage dispute here or whether it should abstain until the South Carolina Case is resolved. Supplemental briefs on this narrow issue shall be no longer than 3,000 words and must be filed no later than April 30, 2024. The Court will issue a ruling resolving the jurisdictional issue, and—if appropriate—Fireman's Motion for Summary Judgment, prior to or at docket call, which is set for May 6, 2024.

**IT IS THEREFORE ORDERED** that supplemental briefs on the issue of this Court's jurisdiction shall be filed no later than April 30, 2024, and shall be no longer than 3,000 words.

**IT IS SO ORDERED.**

Signed: April 22, 2024

Frank D. Whitney
United States District Judge